RMT:RAS
F. #2020R00856

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF (I) A BLACK 2016 TOYOTA, NEW YORK LICENSE PLATE NUMBER JFM8655, VEHICLE IDENTIFICATION NUMBER 2T3BFREV8GW424807, AND ANY CLOSED CONTAINERS AND ITEMS CONTAINED THEREIN AND (II) A BLACK 2017 PORSCHE, NEW YORK LICENSE PLATE NUMBER JSB5372, VEHICLE IDENTIFICATION NUMBER WP1AA2A22HKA85743, AND ANY CLOSED CONTAINERS AND ITEMS CONTAINED THEREIN | APPLICATION FOR A SEARCH WARRANT FOR VEHICLES<br><br>Case No. 20-M-1152 |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, JACKY J. HE, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search of (i) a black 2016 Toyota, New York license plate number JFM8655, vehicle registration number 2T3BFREV8GW424807 ("SUBJECT VEHICLE-1"), and any closed containers and items contained therein and (ii) a black 2017 Porsche, New York license plate number JSB5372, vehicle registration number WP1AA2A22HKA85743 ("SUBJECT VEHICLE-2," together with "SUBJECT VEHICLE-1," the "SUBJECT VEHICLES"), particularly described herein and in Attachment A, for the items particularly described in Attachment B.

2. I am a Special Agent with HSI and have been since 2016. Before that, I was an Officer with Immigration and Customs Enforcement, Division of Enforcement and Removal Operations, for approximately nine years. During my tenure at HSI, I have been involved in the investigation of numerous cases involving the importation and distribution of controlled substances. Through my training, education, and experience, I have become familiar with the manner in which illegal drugs are imported and distributed, the method of payment for such drugs, and the efforts of persons involved in drug trafficking to avoid detection by law enforcement, as well as the uses and capabilities of cellular telephones. I have also participated in the execution of search warrants involving evidence of drug trafficking, including searches of vehicles.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## THE SUBJECT VEHICLES

4. SUBJECT VEHICLE-1 is particularly described as a black 2016 Toyota, New York license plate number JFM8655, vehicle registration number 2T3BFREV8GW424807. As set forth in Attachment A, the applied-for warrant would authorize the search of SUBJECT VEHICLE-1 and any closed containers and items contained therein.

5. SUBJECT VEHICLE-2 is particularly described as a black 2017 Porsche, New York license plate number JSB5372, vehicle registration number WP1AA2A22HKA85743. As set forth in Attachment A, the applied-for warrant would authorize the search of SUBJECT VEHICLE-2 and any closed containers and items contained therein.

6. The SUBJECT VEHICLES are currently in the custody of HSI in a secure parking lot located at 75 North Hangar Road, Jamaica, New York 11430, following the September 16, 2020, arrests of the owners of SUBJECT VEHICLE-1 and SUBJECT VEHICLE-2, YE ZHEN ZHAO and CHEN HAN CHEN, respectively.

## PROBABLE CAUSE

7. On or about September 17, 2020, Ye Zhen Zhao and Chen Han Chen were charged by complaint with attempting to possess with intent to distribute a controlled substance, which offense involved a substance containing ketamine. (20-MJ-824.)

8. On or about October 15, 2020, Ye Zhen Zhao and Chen Han Chen, together with their co-conspirator Long Hui Lin, were charged in an indictment with violations of law relating to the importation, distribution and possession of ketamine. All three defendants were charged with conspiracy to import ketamine and conspiracy to distribute and possess with intent to distribute ketamine. Chen Han Chen and Ye Zhen Zhao were also charged with attempted possession of ketamine with intent to distribute and Long Hui Lin was charged with possession of ketamine with intent to distribute. (20-CR-452.) Certain of the events leading to those charges are set forth below.

9. On or about August 21, 2020, HSI received information that Dutch authorities had seized approximately 35 kilograms of ketamine concealed in a package addressed to Yongxun Trading Co. Ltd. in Colorado Springs, Colorado.

10. On or about September 5, 2020, U.S. Customs and Border Protection ("CBP") officers at JFK conducted a border search on a different package with Airway Bill number 157-2933-1470 (the "Subject Package"), which was manifested as "Garments," transported via Qatar Airways international cargo service, and shipped from "KBSPK Industries" in Sialkot, Pakistan

to "Yongxun Trading CO. LTD." at "Boardwalk Drive Ste Colorado Springs, CO New York, 080919," phone number 1-562-477-0077.

11. Upon examination, the Subject Package contained two boxes. Each box contained sweat suits and, concealed inside the clothing, clear plastic bags containing an off-white powdery substance. The clear plastic bags containing the off-white powdery substance were wrapped in tinfoil. The off-white powdery substance field-tested positive for ketamine, a Schedule III controlled substance.

12. The total amount of ketamine concealed in the Subject Package weighed approximately 19.04 kilograms. The estimated street value for this amount of ketamine is between $761,600.00 and $1,142,000.00.[1]

13. CBP officers and HSI agents removed the ketamine from the Subject Package, re-sealed the Subject Package and prepared for a controlled delivery. Based on probable cause to believe that the Subject Package would be opened within the Eastern District of New York, the Honorable Cheryl L. Pollak issued an anticipatory warrant on September 10, 2020, authorizing the United States to search an unknown location to which the Subject Package would be delivered and to seize evidence, fruits and instrumentalities of violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963. (20-MJ-787.)

14. The Subject Package was initially retrieved on September 11, 2020, from JFK by an individual ("Indvidiual-1") who brought the Subject Package to a location in Queens, New

---

[1] As of September 2020, ketamine retails in the New York City area for approximately $40 to $60 per gram.

York.  Law enforcement officials conducted an interview with Individual-1.  Individual-1 stated that he had been asked by an unknown individual ("Individual-2") over the messaging application known as WeChat to pick up the Subject Package and await further instructions as to where it should be delivered.[2]  Individual-1 stated that one of his sources of income is to act as a middleman for international Chinese students in the New York area, helping them by receiving and delivering packages sent from abroad.  Individual-1 further stated that he often receives such requests through WeChat from unknown numbers, based on reputation and word-of-mouth within the local Chinese community.  Individual-1 further stated that he typically receives requests to pick up packages through the mail or receive them directly at his home, but that this was the first time that he had been asked to pick up a package directly from an airport.

15. Individual-1 gave law enforcement consent to examine his personal phone.  A review of his communications in WeChat corroborated the explanation he had given regarding his retrieval of the Subject Package.[3]

16. While I was in the process of reviewing Individual-1's WeChat communications on Individual-1's phone, Individual-1 received a new WeChat message

---

[2] Based on my training and experience, I know that WeChat is very popular and widely used by Chinese nationals, including those living abroad in the United States.

[3] These messages were in the Chinese language.  I am a certified Mandarin and Cantonese translator and read the Chinese language.

from Individual-2.  Individual-2 asked Individual-1 if he could deliver the Subject Package to a friend of Individual-2.

17. At law enforcement's direction, Individual-1 provided to Individual-2 the location of the Subject Package as a self-storage facility located at 134-31 Merrick Boulevard in Queens, New York.

18. On September 12, 2020, Individual-2 sent Individual-1 multiple messages asking him to keep the Subject Package away from damp areas and asking whether he could make the delivery over the weekend.  At law enforcement's direction, Individual-1 wrote back that he would be away from New York on a long road trip and could not deliver the Subject Package until September 15, 2020.

19. Starting late in the evening on September 14, 2020 and into the early morning hours of September 15, 2020, Individual-2 sent Individual-1 multiple messages asking for his whereabouts and whether Individual-1 could arrange for anyone else to deliver the Subject Package – i.e., before the previously discussed date of September 15, 2020.  Again at law enforcement's direction, Individual-1 made excuses and confirmed that he would deliver the Subject Package on September 15, 2020.

20. On September 15, 2020, at law enforcement officials' direction, Individual-1 wrote to Individual-2 and said he could either deliver the Subject Package that day or on the following day – i.e., September 16, 2020 – with no additional fee to Individual-2 for the extra "storage" cost.  Individual-2 responded that Individual-1 should deliver the Subject Package on September 16, 2020.

21. At approximately 10:00 a.m. on September 16, 2020, Individual-1 received a phone call from a female – later identified as defendant Ye Zhen Zhao. Zhao advised Individual-1 that she would pick up the Subject Package and asked for a meeting location. At law enforcement's direction, Individual-1 told Zhao that they should meet at the intersection of 39th Avenue and College Point Boulevard in Flushing, New York. Zhao told Individual-1 that she would be wearing all black.

22. At approximately 11:00 a.m. on September 16, 2020, at the intersection of 39th Avenue and College Point Boulevard, law enforcement officials observed that an Asian female – later identified as defendant Zhao – dressed in all black was in the driver's seat of SUBJECT VEHICLE-1. Law enforcement officials observed Zhao exit SUBJECT VEHICLE-1 and approach an unknown Asian male – later identified as defendant Chen Han Chen – who was sitting in the driver's seat of SUBJECT VEHICLE-2, which was parked. Zhao appeared to hand Chen a small black item.

23. After Individual-1 and an undercover law enforcement agent (who purported to be there to help Individual-1 move the Subject Package) arrived together at the intersection of 39th Avenue and College Point Boulevard, they called defendant Zhao from Individual-1's phone to tell her that they had arrived. Law enforcement then observed both Zhao and defendant Chen Han Chen drive their respective SUBJECT VEHICLE to get closer to Individual-1's location. Zhao then approached Individual-1's vehicle and spoke with him. After the Subject Package was moved in to SUBJECT VEHICLE-1, Zhao gave the undercover agent $500 in cash, even though the previously agreed upon cost was $374.

7

24.     Zhao then drove away with the Subject Package in SUBJECT VEHICLE-1, followed immediately by Chen Han Chen in SUBJECT VEHICLE-2.  The SUBJECT VEHICLES drove together for a period of time and, at one point, Zhao pulled SUBJECT VEHICLE-1 over to the side of the road and waited after Chen Han Chen in SUBJECT VEHICLE-2 was stopped at a red traffic light.  When Chen Han Chen pulled SUBJECT VEHICLE-2 through the light, Zhao resumed driving SUBJECT VEHICLE-1 with Chen Han Chen in SUBJECT VEHICLE-2 immediately behind her.

25.     After a period of time driving together, the SUBJECT VEHICLES separated and were separately stopped.

26.     Upon stopping Chen Han Chen, law enforcement officials immediately arrested him.  Law enforcement subsequently delivered <u>Miranda</u> warnings.  During an inventory search of SUBJECT VEHICLE-2, law enforcement officials found what appeared to be the small black item that Zhao had handed to Chen Han Chen.  Based on my training and experience, I believe that the item is a device that is designed to detect surveillance devices such as GPS trackers and tripwire signaling devices.

27.     I participated in the stop of Zhao and SUBJECT VEHICLE-1.  Zhao was stopped while in possession of the Subject Package, which was recovered during an inventory search of SUBJECT VEHICLE-1.  During that stop, I observed that Zhao was handling a cellular telephone (hereinafter, the "Zhao Device"), which she placed on to the driver's seat with the screen on.  The WeChat messaging application was visible on the screen, and I observed in plain view that Zhao had been exchanging messages with someone with the name "Dragon" shortly after Zhao took possession of the Subject Package.

28.     As I observed on the Zhao Device in plain view, Dragon, subsequently identified as Long Hui Lin, wrote to the Zhao Device that after receiving the Subject Package, Zhao should park her vehicle (SUBJECT VEHICLE-1) somewhere overnight and wait until the middle of the night to return and check the area of her vehicle.  Dragon also advised Zhao to spend some time and "wander" in a mall, call a car service to pick her up, and not wait for "Typhoon" – later identified as Chen Han Chen.  Furthermore, Dragon wrote to Zhao that because the Subject Package was not open, "they would normally not take action."  Based on my training and experience, I understand these communications to be attempts to advise the recipient on how to evade law enforcement detection and apprehension.

29.     Zhao consented to a search of the Zhao Device, and law enforcement also subsequently obtained a search warrant to search the Zhao Device in an abundance of caution. (20-MJ-867.)  WeChat communications on the Zhao Device between the Zhao Device and someone named Dragon, who was later identified as co-defendant Long Hui Lin, and someone named Typhoon, later identified as co-defendant Chen Han Chen, include communications that I understand based on my training and experience to relate to the distribution of controlled substances.  Controlled substance related communications with Dragon and Typhoon begin in or about March 2020.

30.     There were also communications between the Zhao Device and Dragon and Typhoon relating to the Subject Package.  For example, on or about September 15, 2020, the day prior to the controlled delivery, Dragon sent to the Zhao Device, Individual-1's phone number, a photograph of the Subject Package and the address Individual-1 had provided as the Subject Package's location (134-31 Merrick Boulevard in Queen, New York).  On or about September 16, 2020, the day of the controlled delivery, the Zhao Device sent Typhoon the address

9

Individual-1 had provided as the Subject Package's location (134-31 Merrick Boulevard in Queen, New York), and, shortly in advance of the delivery, Typhoon sent Zhao a "pin drop" near the intersection of 39th Avenue and College Point Boulevard in Queens, New York (where the controlled delivery took place). The pin drop reflected the location where Chen Han Chen was observed in SUBJECT VEHICLE-2 immediately prior to the package delivery.

31. Based on my training and experience, I have learned the following:

    a. Drug traffickers often maintain on hand, and therefore transport in their vehicles, large amounts of U.S. currency in order to maintain and finance their narcotics trafficking.

    b. Individuals who engage in drug trafficking often maintain or transport books, records, receipts, notes, ledgers, airline tickets, money orders, passports, and other papers relating to the procurement, distribution, storage, and transportation of controlled substances in vehicles. These records can include the telephone numbers of customers and sources and the amount of controlled substances distributed to various customers, along with running totals of debts owed by those customers. Such individuals also maintain paraphernalia utilized to cut and package controlled substances in locations to which drug traffickers have frequent and ready access, i.e., vehicles. Based on my training and experience I know that it is common for drug traffickers to maintain these records for significant periods of time, to include several years, for the purpose of knowing what debts are owed to them or what debts they may owe.

    c. It is common for drug traffickers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their

vehicles for ready access and to conceal them from law enforcement authorities. Such contraband and proceeds often includes caches of controlled substances, significant amounts of currency, financial instruments, precious metals, jewelry, automobile titles, and other items of value and/or proceeds of drug sales, and evidence of financial transactions, including evidence of spending large sums of cash acquired from engaging in drug trafficking activities.

      d. Individuals who engage in drug trafficking often maintain or transport contact information of their criminal associates or co-conspirators in their vehicles.

      e. Individuals who engage in drug trafficking often maintain or transport in their vehicles logs, ledgers, receipts, telephone numbers, ATM receipts, travel records, telephone numbers, caches of controlled substances, substances commonly utilized to mix or dilute controlled substances, money derived from drug sales, telephones utilized to facilitate drug trafficking, and other documents related to their drug trafficking activities, in order to have those items in locations in which the drug trafficker has immediate access.

  32. Based on the foregoing, I respectfully submit that there is probable cause to believe that the SUBJECT VEHICLES contain evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 952, 960 and 963 (conspiracy to import controlled substances) and 841 and 846 (distribution and possession with intent to distribute controlled substances, and conspiracy and attempt to do the same).

  33. Following Ye Zhen Zhao's and Chen Han Chen's arrests, HSI agents seized the SUBJECT VEHICLES and moved them to a secure parking lot located at 75 North Hangar Road, Jamaica, New York 11430. In my training and experience, I know that the SUBJECT VEHICLES have been stored in a manner in which its contents are, to the extent

material to this investigation, in substantially the same state as they were when the SUBJECT VEHICLES first came into the possession of HSI.

## CONCLUSION

34. Based on the foregoing, I respectfully request that the Court issue the proposed search warrant pursuant to Federal Rule of Criminal Procedure 41.

35. Because the SUBJECT VEHICLES are already in the custody of HSI, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

_____
JACKY J. HE
Special Agent, Department of Homeland Security, Homeland Security Investigations

Subscribed and sworn to before me by telephone on December 2, 2020:

_____
THE HONORABLE SANKET J. BULSARA
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

## ATTACHMENT A

### Property To Be Searched

The property to be searched is (i) a black 2016 Toyota, New York license plate number JFM8655, vehicle registration number 2T3BFREV8GW424807 ("SUBJECT VEHICLE-1"), and any closed containers and items contained therein and (ii) a black 2017 Porsche, New York license plate number JSB5372, vehicle registration number WP1AA2A22HKA85743 ("SUBJECT VEHICLE-2," together with "SUBJECT VEHICLE-1," the "SUBJECT VEHICLES").  The SUBJECT VEHICLES are currently in the custody of HSI in a secure parking lot located at 75 North Hangar Road, Jamaica, New York 11430.

## ATTACHMENT B

### Particular Things To Be Seized

1. All evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 952, 960 and 963 (conspiracy to import controlled substances) and §§ 841 and 846 (distribution and possession with intent to distribute controlled substances, and conspiracy and attempt to do the same) by Ye Zhen Zhao, Chen Han Chen, Long Hui Lin, and any co-conspirators from March 1, 2020 to the present, including:

   a. Evidence concerning occupancy or ownership of the SUBJECT VEHICLES, including without limitation, bills, mail envelopes, addressed correspondence, diaries, statements, identification documents, address books and telephone directories;

   b. Books records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchase, and distribution of narcotics or controlled substances;

   c. Any controlled substances or items used to package controlled substances;

   d. Proceeds of drug trafficking, including United States currency, precious metals, jewelry and financial instruments, including certificates of deposit and stocks and bonds; and

   e. Any safes, key-lock strong boxes, suitcases, containers, traps, and other boxes or instruments secured by combination and/or key locks of various kinds that may contain items described in this Attachment.